Speaír, J.
Two exceptions are presented. One relates to alleged -incompetent evidence introduced by defendant, and the other to the charge of the court to. the jury.
1. The state having introduced evidence to the-effect that defendant had kept and had -given away intoxicating liquors at his place to divers persons, and had sold whisky tó be drank there to one William Ross, the defendant on his part offered evidence of divers witnesses to the effect that they had tried to buy liquor of the defendant and hie had refused to sell it to them. This testimony was objected to by the state, but the objection was overruled, and the testimony admitted. Was it competent? We think it was not competent on either branch of the case. Evidence that one has violated the statute in the particular instances complained of can not be rebutted by testimony that he did not violate it every time, he had a chance. It- has no tendency to rebut, control or. explain the testimony offered on the part of the state. The opposite contention is illogical and its acceptance as law would tend to introduce at the trial an infinite number of incidents which the state could not be expected to be prepared to contradict, and it would needlessly prolong the trial and encumber the record. If this conclusion be correct then it was also error for the court to refuse the state’s request to instruct the jury to disregard all evidence offered by defendant tending to prove that persons sought to buy liquor of *466 defendant and that he refused to sell to them. Authorities would seem hardly to be necessary but a few of many to be found in the books are here cited. Black on Intox. Liquors, sec. 503; Archer v. State, 45 Md., 33; Corley v. The State, 87 Ga., 332; Commonwealth v. Barlow, 97 Mass., 597; same v. Bickum, 153 Mass., 386.
2. The evidence given at the trial tended to show among other things that prior to the action which resulted in establishing prohibition in the township of Groton the defendant had been the keeper of a saloon known as the Seven Mile House, which was a part of the building in which he and his family resided; that the front room was a barroom; that he was also a butcher, and in connection with his other traffic he kept a shop for the sale of meats. He also entertained guests with meals and took care of the horses of guests who desired that service. Beer signs were painted on the windows. After the township had been voted dry, as it is called, he did not openly carry on the saloon business, but the other branches were continued as before, and the signs in the windows and the paraphernalia of the barroom, including counter, chairs, tables, etc., remained. It was in this room that the alleged sale and the keeping and giving away of liquor occurred. The evidence does not tend to show that this portion of the house was at any time used as a part of the dwelling, and appearances would seem to indicate that it was not so used.
Did the court give the proper instruction to the jury is the question on this branch of the case. At request of the state this instruction was given .before argument: “The keeping of a place where *467 intoxicating liquors are given away to be drank as a beverage in a township which has voted against the sale of intoxicating liquors within its limits is illegal, and if you find beyond a reasonable doubt that the defendant during the time laid in the first count of the affidavit was the keeper of the Seven Mile House, so called, in Groton township, Erie county, Ohio, and that said township had on the 24th day of January, A. D. 1898, so voted - against the sale of intoxicating liquors within its limits, and that during said time intoxicating liquors were given away to be drank as a beverage in said Seven Mile House by the said defendant, as such keeper, it will be your duty to find the defendant guilty as charged in the first count of the affidavit.” At request of defendant the following instruction was given before argument, viz.: “The defendant cannot be convicted of keeping in his house, store, or in any room thereof liquor for his own use, or for giving the same away to a guest provided the giving away is done honestly, and in good faith, and not as a shift or device to evade the provisions of the law.”
In the general charge, after argument, the court further instructed the jury as follows:
“I will say to you in that connection, however, that notwithstanding this law, a man has a right to give to a guest, that is, a visitor to his home, who comes there as a visitor, as a guest, intoxicating liquors, if it is done in good faith and without any intention of violating the law. He may give to his family or his servants intoxicating liquors, if done simply as members of his family or servants in his employ or as guests in his household, but that does not mean that a. man may give *468 away intoxicating liquors to anybody who, may come to his premises or be about his premises indiscriminately, whether they be guests or members of his family or not; and the question for you to determine under this first count of the affidavit is whether or not the defendant did any of. the acts complained of.
“On the other hand, if the fact should be that the defendant simply treated his guests as they appeared from time to time, in the usual and ordinary way, without any intention of violating any law, then you would not be justified in finding that he had violated the law.
“The question is a question of fact for you to determine, if the defendant gave any intoxicating liquors to people who called at his place, whether he gave it to. them simply as his guest, if they were his guests, or whether he gave it to people who came there for. the sole purpose of getting drink there, or whether defendant gave it. to people who called in a business way and for the sole purpose of aiding him in his business and as a benefit to his business. ' If you should believe he gave it away for the purpose of assisting him or aiding him in his business, or benefiting him in his business, and to persons whose sole purpose was to drink intoxicating liquors, you would be justified in finding him guilty. On the other hand, if you find he only gave it to guests who called at his place and were visitors to him and with him at his home, then you would iiot be justified in finding him guilty. The law was never intended to prevent a man from, in his own home or in his own place of business, treating a friend, if he is his guest, to a drink of liquor. On' the other *469 hand, the law was intended to prevent any shift or device or any scheme o.f giving intoxicating liquor out and distributing it among the different callers at his place for the purpose.of avoiding the effect of the local option law which the people had adopted.
“The word ‘beverage’ means ordinarily mixed drinks, but as I construe it under this law, it means the giving of intoxicating liquors or selling of intoxicating liquors to be drank not for medicinal purposes, not .given to a guest, but given to a person who may resort to a place for the purpose of drinking intoxicating liquors, giving it in other words as a device or shift or method to avoid the effect of the local option law.”
Section 4364-25, the section known as the township local option law, provides that “it shall be unlawful for any person within the limits of such township and without the limits of such municipal corporation to sell, furnish or give away any intoxicating liquors to be used as a beverage, or to keep a place where such liquors are kept for sale, given away or furnished.” It is to be noticed that no definition is here furnished of the term “give away,” and no description of the word “place,” as is to be found in later legislation on the same subject, and as is also given in many decisions to which attention has been called. However, the statute not being aimed at the moderate use of intoxicating liquors, but rather at the suppression of the evils resulting from the traffic, a fair construction of the statute quoted would seem to warrant engrafting upon it a qualification in two respects: (1) That the interdiction of giving away should not include such an act when it is *470 one of. mere hospitality, the act not offending against any other statutory provision; and (2) that the inhibition against keeping a place where such liquors are given away, should not apply to the private dwelling of such person unless the dwelling is a place of public resort. As said in State v. Danforth, 62 Vt., 188: “The idea of the statute is that a person in his own house, at his own table, or in his own dwelling- house, may give away to his family or friends, intoxicating liquors unless by so doing his dwelling house becomes a place of public resort.” The statute in general terms prohibits the act, and if an exception is to be availed of to exonerate the defendant it is only fair to hold that the facts on which the exception rests must appear by the evidence. No such exonerating facts appear in this case with respect to the place, and hence the instructions bearing upon that feature given by the court to the jury were at least misleading. The giving away, as well as the alleged selling, occurred in the room known as the barroom, a business room and not a dwelling. We think, also, that the court dwelt with too much emphasis, and too frequent repetition, upon the intent of the defendant. While it is true that the giving away as a device, or shift, or method adopted to avoid the effect of the law, would be a violation of it, yet it is not correct to say, or intimate, that such device or shift, or intent to evade, must be made to appear in order to justify conviction. It is the keeping of a place where such liquors are kept and unlawfully given away which constitutes the offense of keeping a place, and not the intent with which the place is kept, or the giving away conducted.
*471 It is not intended here to hold that it would be impossible to dispense “hospitality” of the kiñd hereinbefore indicated at a place other than one’s dwelling without violating this statute, but it is within bounds to say that the giving away, at such place, to people indiscriminately, or with such frequency as to appear to be habitual, or to cause the place to become a resort, would be a violation of the statute, and this without reference to*the,, intent of the owner.

Exceptions sustained.

Shauck, C. J., Price, Crew, Summers and Davis, JJ., concur.